

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

**U.S. Department of Justice**

United States Attorney   2014 JAN 10 P 3: 27

District of Maryland   CLERK'S OFFICE
                       AT BALTIMORE

BY...

*Evan Thomas Shea*  
*Assistant United States Attorney*  
*Evan.Shea@usdoj.gov*

*Suite 400*  
*36 S. Charles Street*  
*Baltimore, MD 21201-3119*

DIRECT: 410-209-4982  
MAIN: 410-209-4800  
FAX: 410-962-9293

September 12, 2013

Robert C. Bonsib  
Marcus and Bonsib, LLC  
6411 Ivy Lane, Ste 116  
Greenbelt, MD 20770

    Re:    <u>United States v Carlos Hernandez a.k.a. Luis Colon-Bacenet</u>  
            Criminal No. 12-4848-SAG

Dear Mr. Bonsib:

      This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by October 7, 2013, it will be deemed withdrawn. The terms of the agreement are as follows:

Offense of Conviction

      1. The Defendant agrees to waive indictment and plead guilty to a Criminal Information which will charge him with one count of wire fraud, in violation of 18 U.S.C. § 1343. The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

Elements of the Offense

      2. The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are:

Letter to Robert C. Bonsib
September 12, 2013
Page 2 of 7

    a. That there was a scheme or artifice to defraud or to obtain money or property by materially false and fraudulent pretenses, representations or promises as alleged in the Information;

    b. That the Defendant knowingly and willfully participated in the scheme or artifice to defraud, with knowledge of its fraudulent nature and with specific intent to defraud; and

    c. That in execution of that scheme, the defendant used or caused the use of the interstate wires, as specified in the Information.

## Penalties

3. A violation of Title 18 U.S.C. § 1343 is punishable by a maximum term of twenty (20) years incarceration, plus a fine of $250,000 or twice the amount of gross gain or loss from the offense, and a term of supervised release of up to three years. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing.

## Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

    a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b. The Defendant has the right to have his case presented to a grand jury, which would decide whether there is probable cause to return an indictment against him. By agreeing to proceed by way of Information, he is giving up that right, and understands that charges will be filed by the United States Attorney without the grand jury.

    c. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

Letter to Robert C. Bonsib
September 12, 2013
Page 3 of 7

       d. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

       e. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

       f. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

       g. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

       h. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

       i. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

<u>Advisory Sentencing Guidelines Apply</u>

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing

Letter to Robert C. Bonsib
September 12, 2013
Page 4 of 7

Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

The base offense level is 7 pursuant to U.S.S.G. § 2B1.1(a)(1). There is a 2 level increase pursuant to U.S.S.G. § 2B1.1(b)(1)(C) because the loss amount was more than $5,000 but less than or equal to $10,000.

This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty. **Thus, the adjusted offense level is 7.**

7. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8. This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

### Obligations of the United States Attorney's Office

9. At the time of sentencing, this Office will recommend a sentence within the final guideline range determined by the Court to be applicable.

Letter to Robert C. Bonsib
September 12, 2013
Page **5** of **7**

    10. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

### Payment of Taxes

    11. The Defendant agrees to pay restitution to the State of New York in the amount of $3,251.25, and to the City of New York in the amount of $504.90 for taxes owed on the liquor transported into that state in April and May of 2012 as described in the statement of facts.

### Waiver of Appeal

    12. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

    a)      The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

    b)      The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release) except as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that it is above the final guideline range determined by the Court to be applicable; and (ii) this Office reserves the right to appeal any term of imprisonment to the extent that it is below the final guideline range determined by the Court to be applicable.

    c)      Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

    d)      The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-

Letter to Robert C. Bonsib
September 12, 2013
Page 6 of 7

captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

13. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

14. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

15. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Evan T. Shea
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

8/3/2013
Date

Carlos Hernandez

I am Carlos Hernandez's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

10/3/13
Date

Robert C. Bonsib

## ATTACHMENT A:
## STATEMENT OF FACTS

The United States and the Defendant, Carlos Hernandez, stipulate and agree to the following facts that the United States would have proven beyond a reasonable doubt if the case had proceeded to trial. The parties further stipulate and agree that these are not all of the facts that the United States would have proven at a trial of the case.

From at least April 2012 through December 2012, Carlos Herndandez engaged in a scheme and artifice to defraud the state and city of New York of excise tax revenue on the wholesale distribution of liquor by purchasing liquor in Maryland and then transporting that liquor back to New York City. Hernandez arranged for these purchases by calling a liquor store in Cecil County, Maryland – at least on one occasion from outside Maryland – and placing orders. Hernandez concealed these purchases and evaded the applicable excise taxes by failing to file reports with the state of New York describing the transportation of the liquor into the state of New York.

Any person or entity transferring or shipping liquor into New York for sale was required by law (a) to register with the state of New York, and (b) to provide monthly reports of the quantities of liquor shipped into the state of New York. Those reports are used to enforce New York City and New York State liquor excise taxes. Hernandez did not register with the state of New York or report to the state of New York the transportation of the liquor. Hernandez thereby intended to conceal the origin of the liquor from the state of New York to avoid the payment of New York State and New York City excise taxes.

In April 2012, Hernandez called Northside Liquors and placed an order for 50 cases of whiskey, and arranged for the liquor to be picked up on April 6, 2012 from Northside. On April 6, 2012, an individual arrived at Northside Liquors and paid $16,250 in cash for the liquor and stated that he was heading back to Queens, New York. The individual took the 50 cases, containing 525 liters of taxable liquor, and departed toward New York.

In May 2012, Hernandez called Northside Liquors and placed an order for a quantity of whiskey, and arranged for the whiskey to be picked up from Northside on May 11, 2012. On May 11, 2012, an individual went to Northside Liquors in a van. The individual paid $43,930 in cash for the liquor and loaded 130 cases,

containing 1,387.50 liters of taxable liquor, into the van and departed toward New York.

On December 11, 2012, Hernandez made a telephone call from New York to Northside Liquors and ordered 330 cases of whiskey. On December 14, 2012, Hernandez arrived at Northside Liquors in a car, along with another individual who arrived in a truck. Hernandez paid representatives of Northside Liquors over $100,000 in cash and loaded into the truck at least 300 cases of the whiskey containing a total of at least 3,150 liters of taxable liquor. The liquor was driven back toward New York City. Hernandez was stopped with the liquor by law enforcement on Interstate 95 in Maryland. Hernandez was arrested during this stop, and during that arrest, Hernandez provided law enforcement a false name, Luis Colon-Bacenet.

At no point in 2012 did Hernandez or anyone else file reports with the state of New York describing the transportation of the liquor in April and May of 2012 or the attempted transportation of liquor in December 2012. The New York State excise tax on liquor is $6.44 a gallon ($1.70 a liter) and the New York City excise tax on liquor is $1 a gallon ($0.264 a liter). The sale on April 6, 2012 involved 525 liters of liquor, the sale on May 11, 2011 involved 1,387.5 liters of liquor, and the December 14, 2012 involved at least 3,150 liters of liquor. Hernandez transported or attempted to transport these amounts of liquor to New York City without paying the required excise taxes. Thus, the total amount of actual and intended tax loss to the state and city of New York was:

| Date | Amount | NY City Tax | NY State Tax | Total Tax |
|---|---|---|---|---|
| April 2012 | 525 liters | $1.70/liter | $0.264/liter | $1,031.10 |
| May 2012 | 1,387.5 liters | $1.70/liter | $0.264/liter | $2,725.05 |
| Dec. 2012 | 3,150 liters | $1.70/liter | $0.264/liter | $6,186.60 |
| | | | **Grand Total:** | $9,942.75 |

At all times, Hernandez acted knowingly and willfully.

I have reviewed the foregoing statement of facts with my attorney, understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as part of my plea agreement with the government in this case.

Agreed on this _3_ day of ___8___, 2013

_____
Carlos Hernandez